Melvin Teitelbaum, Esq. (SBN 97884)
7162 Beverly Blvd. # 123
Los Angeles, California 90036
Telephone: (213) 804-3001
Email: melteitelbaum@earthlink.net

Zachary Lawrence, Esq. (NY Bar: 5798202)
(*Pro hac vice motion to be filed concurrently*)
Lawrence Law Firm PLLC
166 Five Acres Lane
Cold Brook, NY 13324
Telephone: 202-468-9486
Email: zach@zlawpllc.com

*Attorneys for Plaintiff James Rutherford*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| JAMES RUTHERFORD<br><br>Plaintiff,<br><br>vs.<br><br>JOSE ORTEGA,<br><br>Defendant. | Case No. ___________________<br><br>Hon. ______________________<br><br>**COMPLAINT FOR**<br>**1. INTRUSION UPON SECLUSION; AND**<br>**2. INTENTIONAL AND INFLICTION OF EMOTIONAL DISTRESS.**<br><br>JURY TRIAL DEMANDED |

Plaintiff James Rutherford, by and through his attorneys, aver as follows:

**PRELIMINARY STATEMENT**

1. In February of 2024, Plaintiff's significant other suffered serious complications from proton therapy meant to treat meningiomas, brain tumors, which ultimately led to emergency neurosurgery after life-threatening brain swelling. This was the culmination of a months-long struggle, which was only complicated by the fact that Plaintiff's significant other suffers from quadriplegia.

2. Rather than being allowed peace, and being able to care for his significant other as she laid in the ICU recovering from brain surgery, Defendant, Jose Ortega ("Mr. Ortega") repeatedly attempted to contact Plaintiff. When Plaintiff refused to accept the communications, Mr. Ortega left voicemail, not satisfied that Mr. Rutherford would listen to the voicemail, he sent texts.

3. These were not well wishes, but rather threats of physical violence, which Mr. Ortega felt compelled to send despite knowing full well the plight which Mr. Rutherford and his significant other Patricia Filardi ("Ms. Filardi," or on occasion "Plaintiff's Significant Other"), were experiencing.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of the State of California and a citizen of the State of Illinois and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Mr. Ortega because Mr. Ortega purposefully availed himself of the laws of this jurisdiction and caused damage within this jurisdiction to a citizen of the jurisdiction.

6. Defendant's acts were intentional, aimed at the forum, and were likely to, and in fact did cause harm within the forum.

7. The Defendant knew Mr. Rutherford was a California resident, who was then in California.

8. Defendant focused his conduct purely at California residents; he did not communicate publicly or to a larger audience, but solely transmitted the communications to California, to an audience exclusively composed of California residents.

9. Mr. Ortega threatened to travel to California to commit violence on a California resident, and repeatedly communicated an intention to do the same.

10. Mr. Ortega's actions were intentional and purposefully focused on the forum.

11. Defendant knew that Mr. Rutherford was a citizen of California, then in California, particularly susceptible to abuse because of events then happening in California, purposefully focused his conduct towards California to cause injury within the jurisdiction by, *inter alia*, repeatedly stating he was travelling to California to do physical harm to a California resident who was experiencing a family emergency in California.

12. Beyond all of the above, Mr. Ortega owns real property within the State and has significant personal connections within the State.

13. Bringing Mr. Ortega into the State to face the justice comports with traditional notions of fair play, and on information and belief, it will not come as a surprise when Mr. Ortega is sued in the jurisdiction.

14. Thus, exercising jurisdiction over Mr. Ortega would be consistent with the laws of California and the United States Constitution.[1]

## VENUE

15. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

16. Plaintiff James Rutherford ("Mr. Rutherford" or "Plaintiff") is a resident of Rancho Mirage, County of Riverside, California. Plaintiff resides with his partner of 16 years, Ms. Filardi.

---

[1] *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (noting that where federal law does not statutorily define personal jurisdiction state's laws will); *Zehia v. Superior Ct.*, 45 Cal. App. 5th 543, 556 (2020) (finding private messages knowingly aimed at exclusively California audience, to cause harm in California, sufficient to confer specific jurisdiction over tortfeasor).

17. Ms. Filardi was the victim of street crime during her early twenties: while on her way to visit her ailing grandfather, Ms. Filardi was senselessly stabbed. The attack left Ms. Filardi permanently disabled and a quadriplegic.

18. Because of Ms. Filardi's disabilities, she has unique medical needs, and is in medical respects particularly vulnerable—on a number of occasions Plaintiff's Significant Other has been hospitalized with life threatening ailments related to, or aggravated by, her quadriplegia; Ms. Filardi, however, like any other person, has additional health concerns, small and large, which have developed over her life.

19. Plaintiff, as Ms. Filardi's partner, has been Ms. Filardi's primary caregiver for more than a decade. He does this, in spite of his own, somewhat significant health concerns.

20. While Plaintiff dearly loves Ms. Filardi, and will continue to care for her, there are certain realities of the situation which naturally create heightened stress, demands, and anxieties.

21. Shari Schabowski ("Ms. Schabowski") is Ms. Filardi's cousin.

22. Ms. Schabowski trained as a medical doctor and for a number of years worked in the John H. Stroger, Jr. Hospital of Cook County emergency room.

23. On information and belief, Ms. Schabowski was an "emergency medicine physician" who specialized in providing "emergency medicine," which exposed her to a wide range of acute medical conditions requiring urgent attention and diagnosis.

24. On information and belief, despite the wide range of complaints to which an emergency medicine physician may be exposed, neither do these doctors generally, nor did Ms. Shabowski in particular, have specialized expertise in neurology, neurosurgery, oncology, *etc.*

25. On information and belief, Ms. Shabowski had no particular expertise or training with regard to the particular medical complaints of Ms. Filardi, as is relevant, to this Complaint, or for that matter more generally.

26. Despite this, Ms. Shabowski can be overbearing and importunate; she, in the past, has inserted herself into situations where *she* believes that her generalized medical knowledge allows for her to advise on matters outside of her specialty. This presumption can be unwelcome, and her insistence on expertise can offend those who truly have specialized expertise.

27. On information and belief, the situation would be analogous to a lawyer who practices matrimonial law explaining the finer points of First Amendment litigation to a staff attorney at FIRE or the ACLU.[2]

28. Ms. Schabowski volunteering her medical experience is likely done out of kindness, and on occasions might be welcome, can create significant tensions.[3]

29. Sherry is not a party to this lawsuit.

30. Defendant Jose Ortega is Ms. Schabowski's live-in boyfriend.

31. Mr. Ortega, to the best of Plaintiff's knowledge is unemployed, unpredictable, and lacks any responsibilities or commitments that would prevent him from taking impulsive actions.

32. Additionally, Mr. Ortega, on information and belief, has ready access to funds, because Ms. Schabowski supports Mr. Ortega financially, which would allow him to carry out the threats complained of herein.

---

[2] It may at best demonstrate the person cares, but often can be grating and very often is based on an estimation of knowledge which has been terribly inflated by the Dunning-Kruger effect.

[3] Plaintiff does not intend to disparage Ms. Schabowski's intentions, but, as may be obvious anecdotally, the intercession of a somewhat distant family member, an adult cousin, at times of great stress may obviously be a mixed "blessing."

33. Additionally, Mr. Ortega, well into his adulthood has committed, and been convicted of, various crimes which leant credibility to the threats he made against Plaintiff.

34. Mr. Ortega is the latest in a line of significant others that go into and out of Ms. Schabowski's life and the only connection between Mr. Ortega and Patti is happenstance. Both Patti and Mr. Rutherford are polite to Mr. Ortega, but there is no particular familiarity or closeness—this was not a man who was considered family, but rather another gentleman who Ms. Schabowski, an importuning cousin, took into her home, supported financially, and attempted to reform.

35. Defendant on information and belief is not a resident of the State of California, but rather resides in Chicago, Illinois at the home of Ms. Schabowski.

## **FACTUAL ALLEGATIONS**

36. Plaintiff's Significant Other developed meningiomas, brain tumors.

37. In or about 2024, Ms. Filardi elected to have the meningiomas treated *via* proton therapy (radiation) at The University of California, Irvine Medical Center.

38. Ms. Filardi and Mr. Rutherford were informed that there were minimal complications and side-effects associated with proton therapy.

39. Ms. Schabowski volunteered to travel to California, Ms. Filardi accepted the offered "help," to assist in driving her to therapy, and Ms. Schabowski flew to California and stayed Plaintiff's home.

40. Plaintiff is disabled and has mobility issues, making driving difficult.

41. Unfortunately, Plaintiff's Significant Other suffered major complications, apparently a side effect of the proton therapy. She suffered increased brain swelling over the course of weeks after the completion of the therapy.

42. This culminated in a life-threatening condition where Patti had to have emergency brain surgery—a ten-hour procedure—to save her life.

43. Ms. Filardi's medical situation, over a course of months was extremely stressful, challenging and unpleasant. Things were not particularly easy in the Filardi-Rutherford home at this time.

44. Neither Mr. Rutherford nor Ms. Filardi is a victim or martyr. Both live fulfilling lives, and for the past 16 years both have cared for one another to ensure that they share a meaningful existence. Having noted the above, there are obviously everyday struggles which are experienced by them which compound on those which normal couple's face: Ms. Filardi is and has been confined to a wheelchair and is unable to use her fingers, who requires assistance with everyday activities that Mr. Rutherford provides.

45. Mr. Rutherford is a man in his seventies with mobility challenges.

46. The realities of the above situation simply add a level of stress and difficulty to life which is not necessarily present where both partners in a relationship are healthy and hale.

47. Unsurprisingly, at some point, Ms. Schabowski argued with Plaintiff and Plaintiff informed Ms. Schabowski that her help was no longer welcome. Both parties were heated, and both exchanged less than considered words.

48. The above situation was uncomfortable, and may not have represented particularly reasoned and calm dialogue, but was not out of control or beyond the norms of human interaction.

49. Ms. Schabowski returned home to Chicago, and Patti, thankfully, survived her emergency brain surgery.

50. While Mr. Rutherford was with Ms. Filardi in the ICU recovering from her brain surgery. Mr. Ortega began calling Mr. Rutherford's phone and contacting him through text and voice messages

51. The messages were harassing and threatening and, on information and belief, were aimed at disturbing the peace of Mr. Rutherford.

52. The messages generally speak for themselves, but boiled down to various threats of violence, communicated to a man who was at the time attempting to care for a partner who had almost died; Mr. Ortega informed Mr. Rutherford that they would "cross paths one day" and that he would be "flying tomorrow" and "see [Mr.] Rutherford then."

53. This was sent subsequent to direct threats of violence and a statement that Mr. Ortega would "beat [Mr. Rutherford's] ass,"[4] and a reiteration that Mr. Ortega was going to "fly over there and give [Mr. Rutherford] a little visit."

54. The above messages were communicated throughout the day of February 8, 2025, when on information and belief, Mr. Ortega was aware of the stress that Mr. Rutherford was under and the continued uncertainty of Ms. Filardi's survival and condition, of the couples' plight more generally over the course of months.

55. On information and belief, Mr. Ortega was aware of Mr. Rutherford's particular and peculiar susceptibility to emotional distress and was aware of the privacy which Mr. Rutherford expected and Mr. Ortega purposefully thwarted.

56. On information and belief, Mr. Ortega chose to communicate his threats and other outrageous messages at this time specifically to maximize the harm and distress caused Mr. Rutherford.

57. A rational and normal member of the population upon hearing of this conduct would perceive it to be, given the totality of circumstances, outrageous and extreme.

---

[4] Mr. Ortega is an hearty man, exhibiting robust health, while Mr. Rutherford at the time was a 72-year-old disabled man with serious mobility issues.

58. The conduct would be perceived as intolerable within a civilized society by an average member of that society.

59. The above caused Mr. Rutherford significant emotional distress. Apart from the natural distress the conduct caused him the threats were particularly distressing not only in that Mr. Ortega had the peculiar personality traits, and history, which made his representations credible, but more specifically in that were he to carry out those threats at this time such would undoubtedly have an impact on Patti who had just had emergency neurosurgery following, complications from treatment of brain tumors, and, as C-5 quadriplegic, is particularly dependent on Mr. Rutherford for her recovery and well-being.

60. Mr. Rutherford was terrified both for himself and Ms. Filardi, and the collateral effects such would have on Plaintiff's Significant Other's ability to survive and recover from her brain surgery should Mr. Ortega decide to carry out his threats and further injure an already disabled Mr. Rutherford, upon whom Ms. Filardi depended.

61. Mr. Rutherford, as a result of the emotional distress has manifested various demonstrable symptoms including: severe headaches, stress-aggravated mobility issuses, insomnia, tension, and anxiety.

62. As a direct result of the distress, and its physical manifestations, Mr. Rutherford has been forced to seek medical treatment from Brightside Health for emotional therapy to help alleviate the anxiety and depression and Eisenhower Hospital for physical treatment brought on by the increased tension and anxiety which further aggravated his mobility disabilities.

63. On information and belief, this was the intent of Mr. Ortega: to cause Mr. Rutherford severe and significant emotional distress in a time where both Mr. Rutherford and Ms. Filardi were particularly vulnerable.

64. After receiving multiple messages throughout that day, Mr. Rutherford "blocked" Mr. Ortega.

65. Mr. Ortega's actions were aimed at intruding upon Mr. Rutherford's solitude and peace at a moment where he reasonably could expect to be left alone in quiet peace absent excessive and offensive sensory intrusion.

66. Mr. Rutherford, indeed, did believe that he would be afforded reasonable privacy and freedom from annoyance and threat while caring for his desperately ill wife.

67. It was made clear to Ms. Schabowski that the couple sought peace, privacy, and some time alone and undisturbed. On information and belief, she communicated this to Mr. Ortega, who sought to frustrate that reasonable wish and expectation of Plaintiff and Plaintiff's Significant Other.

68. Repeated telephone calls, or messages, which are ignored are a sensory intrusion which may objectively and offensively intrude upon a party's solitude.

69. In the instant case, the repeated phone calls, and threatening messages sent by Mr. Ortega did in fact intrude upon Mr. Rutherford's reasonably expected solitude during this highly vulnerable moment in his and Ms. Filardi's life.

70. The intrusion was highly offensive and would be perceived as such by a rational member of society.

71. On information and belief, Mr. Ortega acted with willful malice and intended to cause injury to Plaintiff and to act in a despicable manner which would cause a person cruel and unjust suffering.

## COUNT I

***Intentional Infliction of Emotional Distress***

**(By Plaintiff James Rutherford against Defendant Jose Ortega)**

72. Plaintiff incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 50 hereof, as if fully set forth herein.

73. Defendant Ortega intentionally undertook a course of conduct that is intolerable within a civilized society, aimed at causing Mr. Rutherford severe emotional distress.

74. Specifically, Mr. Ortega acted in the manner described in paragraphs 1-71 above.

75. Mr. Ortega did this when he, on information and belief, knew Mr. Rutherford to be particularly vulnerable and particularly susceptible to emotional distress.

76. As a result of Mr. Ortega's actions, Mr. Rutherford experienced severe suffering and extreme emotional distress.

77. Mr. Ortega's actions were the actual and proximate cause of the extreme emotional distress suffered by Mr. Rutherford and its outward manifestation of symptoms

78. As a result of Defendant Plaintiff suffered damages in an amount to be proven at trial, but in no event less than $75,000

## **COUNT II**

### ***Intrusion upon Seclusion***

**(By Plaintiff James Rutherford against Defendant Jose Ortega)**

79. Plaintiff incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 71 hereof, as if fully set forth herein

80. Plaintiff had an objectively reasonable expectation of seclusion or solitude in on or about February 8, 2025. Specifically, because of the events that had occurred, and which Mr. Ortega was aware of, Mr. Rutherford had a reasonable expectation that he would not be subject to repeat and highly offensive and threatening phone calls and messages.

81. These repeated and threatening phone calls and messages penetrated into Mr. Rutherford's zone of sensory privacy.

82. A reasonable person would have found the intrusion highly offensive.

83. The above conduct proximately caused Mr. Rutherford damage

84. As a result of the above, Plaintiff suffered damages in an amount to be proven at trial, but in no event less than $75,000.

WHEREFORE, Plaintiff James Rutherford prays for a judgment against Defendant Jose Ortega as follows:

1. For general damages, according to proof;
2. For special damages, according to proof
3. For punitive damages in an amount to be determined by the Court according to proof;
4. For an award of costs;
5. For an award of prejudgment interest for the maximum amount allowed by law;
6. For an award of post-judgment interest for the maximum amount allowed by law; and
7. For any and all other relief the Court deems just and proper.

[signatures follow]

Dated: February 5, 2026

Respectfully submitted,

/s/Melvin Teitelbaum, Esq.
Melvin Teitelbaum, Esq.
(SBN 97884)
7162 Beverly Blvd. # 123
Los Angeles, California 90036
Telephone: (213) 804-3001
Email: melteitelbaum@earthlink.net

/s/Zachary Lawrence
Zachary Lawrence
Lawrence Law Firm PLLC
166 Five Acres Lane
Cold Brook, NY 13324
Telephone: 202-468-9486
Email: zach@zlawpllc.com
NY Bar No. 5798202*

** Filing motion for Pro Hac Vice admission concurrent with this pleading*

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial in this action.

Dated: February 5, 2026

Respectfully submitted,

/s/Melvin Teitelbaum, Esq.
Melvin Teitelbaum, Esq.
(SBN 97884)
7162 Beverly Blvd. # 123
Los Angeles, California 90036
Telephone: (213) 804-3001
Email: melteitelbaum@earthlink.net

/s/Zachary Lawrence
Zachary Lawrence
Lawrence Law Firm PLLC
166 Five Acres Lane
Cold Brook, NY 13324
Telephone: 202-468-9486
Email: zach@zlawpllc.com
NY Bar No. 5798202*

*Attorneys for Plaintiffs*

* *Filing motion for Pro Hac Vice admission concurrent with this pleading*